IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Jeffrey Straub, ) | Civil Action No.: 6-04-21847-RBH |
| ) | |
| Plaintiff; ) | |
| ) | |
| vs. ) | |
| ) | **O R D E R** |
| County of Greenville, South Carolina, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**Procedural History**

Plaintiff Jeffrey Straub ("Straub") filed this action in the Greenville County Court of Common Pleas, alleging eight causes of action against his former employer, defendant Greenville County ("County"), and three individual defendants. The case was removed to this Court pursuant to 28 U.S.C. §1331 on the basis of federal question jurisdiction. The plaintiff filed an amended complaint on June 1, 2005, naming as defendants Greenville County and Dr. Stephen Merlin. By Order filed October 13, 2005, Dr. Merlin was dismissed as a party defendant and his counterclaims against the plaintiff were also dismissed.

The amended complaint alleges the following federal causes of action: (1) deprivation of procedural due process under the Fourteenth Amendment to the United States Constitution and the due process clause of the South Carolina Constitution by virtue of insufficient pre-termination notice and opportunity to be heard; (2) vagueness of Greenville County Alcohol and Drug Testing Policy and/or violation by the policy of Fourteenth Amendment due process clause and due process clause of the South Carolina Constitution; (3) deprivation of procedural due process under the Fourteenth

1

Amendment to the United States Constitution and the South Carolina Constitution by virtue of the lack of a post-termination hearing; (4) deprivation of substantive due process under United States and South Carolina Constitutions; and (5) unreasonable search under the Fourth Amendment of the United States Constitution and the South Carolina Constitution. The amended complaint also alleges the following State law claims: a sixth cause of action for breach of contract and a seventh cause of action for breach of contract accompanied by fraudulent act. (The eighth cause of action for professional negligence against Dr. Merlin was dismissed by the Order referenced hereinabove.)

Defendant County filed a motion for summary judgment on December 1, 2005. Straub filed a cross motion for partial summary judgment on December 21, 2005.[1]

A hearing was held on the motions on February 1, 2006. After hearing oral arguments, this Court took the motions under advisement.

## Facts

Straub was hired by Greenville County in September of 1997 as a paramedic for the county's Emergency Medical Services (EMS). In May of 2002, County adopted by ordinance a new Alcohol and Drug Testing Policy. In addition to providing for pre-employment testing and for "reasonable suspicion" testing (which are not called into question in the present litigation), the policy implemented a program subjecting County "employees that work in high-risk or safety sensitive positions to random alcohol and drug testing." Each year, the policy provides that at least 25% of safety sensitive positions will be tested for alcohol/drug use. "Safety sensitive positions" are defined as those "positions that the County determines to involve law enforcement, public works and security, the protection of life and

---

[1] The plaintiff states in his memorandum in support of motion for partial summary judgment that the facts are undisputed insofar as they relate to his constitutional claims. Plaintiff takes the position that the facts are disputed with reference to the breach of contract claims.

property, and public health or safety." The policy established concentration levels for initial and confirmatory screening for each substance covered by the policy. The presence of one of these drugs at a concentration level over the established cut-off level was to be reported as a preliminary positive result and would result in immediate suspension of the employee. Urine specimens that test positive are re-checked with gas chromatography with mass spectrometer detection.

The policy provides for review by a "medical review officer" (MRO), a "licensed physician with knowledge of substance abuse disorders and the appropriate medical training to interpret and evaluate all positive test results together with an individual's medical history and any other relevant biochemical information." The policy provides that after obtaining the laboratory's test results, the MRO will "review the form used to document the handling and storage of a urine specimen" and "contact the employee to make sure there are no medical or other legitimate reasons for the positive result." Employees whose drug tests are certified as positive by the MRO are terminated, and the County interprets the drug testing policy to prohibit an employee from utilizing the County's grievance procedure[2] for reviewing adverse employment actions.

On June 28, 2002, Straub was requested to provide a urine sample for random drug testing. He signed a consent form and provided a urine sample at a local, privately held company, which provided sample collection services and forwarded samples to an accredited laboratory for analysis. Straub's

---

[2] Greenville County Council passed an ordinance on December 1, 1998, adopting a revision and codification of the personnel rules ordinance of Greenville County. The Ordinance dated May 7, 2002, which adopted the drug and alcohol testing policy, repealed all prior county council "enactments and policies which are inconsistent with the provisions contained within this ordinance." All employees signed an acknowledgement that the policy did not constitute a contract and that any violation of the policy "may result in disciplinary action up to and including discharge." The front cover of the policy states: "The Alcohol and Drug Testing Policy is not intended to create a contract between the County and any employee nor bind the County or any employee to a specific or definite period of employment. All County employees are considered at-will employees. THIS IS NOT A CONTRACT."

3

sample tested as positive for tetrahydrocannabinol (THC), the active ingredient in marijauna, in an initial immunoassay screen and a confirming gas chromatography with mass spectrometry. Immediately after the County was informed of these results, Straub was suspended pursuant to the policy, pending review and certification by an MRO.

Dr. Stephen Merlin, who was retained by the collection facility to serve as an MRO for the test results of Greenville County employees, contacted Straub by telephone to inquire whether Straub had an explanation for the preliminary positive result. Straub denied the use of any illegal or prescription drugs, but questioned Dr. Merlin about whether any of the supplements or over-the-counter medications he took could have resulted in the positive test result. The only reason Dr. Merlin was prepared to recognize as a "legitimate excuse" for the positive result was possession by Straub of a valid prescription for Marinol. Dr. Merlin indicated that the basis for this position was the federal guidelines for MROs as applied in the Department of Transportation (DOT) regulations. Merlin Depo., Exhibit 3. Determining that Straub did not have a prescription for Marinol, Dr. Merlin certified Straub's test result as positive and reported the result to the County. Under the drug and alcohol policy, the MRO opinion was conclusive, and Straub was terminated.[3]

Straub offered to undergo further testing and requested a grievance hearing. By letter dated July 18, 2002, County notified Straub that the positive test result was not grievable. Straub then underwent a drug test on underarm hair at another certified laboratory at his own expense on August 1, 2002 (over a month after the urine test) and presented the negative results of this drug testing for consideration by

---

[3] Dr. Merlin's qualifications include being program sponsor and medical director of a methodone clinic in Columbia, South Carolina; adjunct professor in the Departments of Family Practice and Psychiatry at the University of South Carolina School of Medicine; and CEO of Substance Abuse Consultants in Columbia, South Carolina. He is certified by the American College of Occupational Environmental Medicine. Merlin Depo., pp. 10-15.

the County. Again, the County took the position that the policy dictated mandatory termination if drug test results were certified by the MRO.

### Federal Issues

1. Did County violate the Fourth Amendment prohibition of unreasonable searches under the United States Constitution in requiring Straub to undergo random drug testing?

2. Did County violate Straub's procedural due process rights under the Fourteenth Amendment in terminating him without a hearing?

3. Did County's actions in terminating Straub, as described hereinabove, violate his substantive due process rights under the Fourteenth Amendment?

### Legal Standards for Summary Judgment Motions

Summary Judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rules 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed. R. Civ. P. 56(e); Matsushita Electrical Industrial Co., Ltd.v. Zenith Radio Corp.., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc.., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely

on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Baber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

## Discussion

**Fourth Amendment**

The Fourth Amendment to the United States Constitution, which applies to the States through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their person, papers, houses and effects, against unreasonable searches and seizures." U.S.Const. amend. IV. A urine drug test imposed by state officials constitutes a search under the Fourth Amendment. Skinner v. Railway Labor Executives' Assn., 489 U.S. 602 (1989). The question then becomes whether the search is "unreasonable". Under the Fourth Amendment, a search must ordinarily be based on suspicion of wrongdoing. However, exceptions to the general rule may be justified for "special needs, beyond the normal need for law enforcement." Treasury Employees v.Von Raab, 489 U.S. 656 (1989). Courts must undertake a "context-specific inquiry, examining closely the competing private and public interests advanced by the parties." Chandler v. Miller, 520 U.S. 305 (1997). Where the privacy interests are minimal and where an important governmental interest would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion. Skinner, supra.

> Skinner and Von Raab provide the framework on which scores of government drug testing programs have been upheld. To date, state and federal courts have allowed testing of correctional officers, fire fighters, public hospital employees, police officers, sewer district employees, court personnel and numerous other public employees of almost every rank and class. In 1995, the Supreme Court revisited public drug testing

and upheld random testing of high school student athletes.  Veronia School District v. Acton, 115 S.Ct. 2386 (1995).

 "The Needle and the Damage Done:  The Fourth Amendment, Substance Abuse and Drug Testing in the Public Sector," 8 South Carolina Lawyer 19 (1997).  See also, American Federation of Government Employees L-2110 v. Derwinski, 777 F. Supp. 1493 (N.D. Cal. 1991), holding random drug testing of VA health care professionals was reasonable under the Fourth Amendment, and Piroglu v. Coleman, 25 F.3d 1098 (D.C. Cir.1994), holding, even in the absence of regulations governing testing procedures, emergency medical technician trainees could be tested since they were charged with protecting public health and safety.

In Board of Education v. Earls, 536 U.S. 822 (2002), the Court upheld random drug testing of the school children participating in competitive extracurricular activities.  The Court stated:  "In certain limited circumstances, the government's need to discover latent or hidden conditions, or to prevent their development, is sufficiently compelling to justify the intrusion on privacy entailed by conducting searches without any measure of individualized suspicion.  Therefore in the context of safety and administrative regulations, a search unsupported by probable cause may be reasonable when special needs . . . make the warrant and probable-cause requirement impracticable."  See also, International Union, United Auto.Workers, et al v. Winters, 385 F. 3d 1003 (6th Cir. 2004), cert. denied, 2005 WL 218427 (2005), holding that random drug testing of state employees who provided health care to residents of state mental hospitals did not violate the Fourth Amendment. ("An employee involved in substance abuse might succumb to the temptation to take wrongful advantage of his or her access to these controlled substances.  As with . . . health care providers who provide care to prisoners, there is

a risk of harm to the patient if a care giving employee is under the influence of drugs or alcohol.") Id. at 1010.

In Carroll v. City of Westminster, 233 F.3d 208 (4th Cir. 2000), the Fourth Circuit considered a case in which a police officer sued his former employer, a municipality, alleging violations of the Fourth Amendment. The police officer consulted a physician concerning tightness in the chest and fatigue. Unbeknownst to the officer, the city requested the doctor to perform a drug test on his urine. The officer was discharged after the drug test was positive. Although the plaintiff had signed a general waiver in which he consented to drug testing, he did not know that his urine was being tested for use of illegal drugs at that visit to the physician. The Court held that the government's interests are "not just legitimate, they are compelling". Id. at 211, citing Von Raab, 489 U.S. at 670. It recognized that individuals in safety-sensitive positions have a "reduced expectation of privacy" and found that the officer had signed a waiver stating that he understood that his urine could be tested for drugs at any time.[4] The Court found that the employee's Fourth Amendment rights had not been violated.

This Court finds that, although the testing of Straub's urine was a search, the search was not unreasonable. An emergency medical technician such as the plaintiff occupies a safety-sensitive position which involves protecting the public welfare and safety. Therefore, Greenville County is granted summary judgment on the portion of the plaintiff's fifth cause of action which alleges violation of the Fourth Amendment to the United States Constitution.

---

[4] Straub signed an alcohol/drug testing consent form on June 28, 2002, stating: "As a condition of employment or continued employment, I understand and agree to undergo pre-employment alcohol/drug testing, random testing . . . as required. I understand that if my test results are positive, . . . as a current employee I will be terminated." Exhibit 1 to Motion for Summary Judgment by County.

**Procedural Due Process under Fourteenth Amendment**

Straub alleges a procedural and substantive due process violation prohibited by 42 U.S.C.A Section 1983. This section provides, in pertinent part, that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State, Territory of the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof, the deprivation of any rights, privileges, or immunities secured by the Constitution and Laws, shall be liable to the party injured in an action at law…

The Due Process Clause of the Fourteenth Amendment states: "nor shall any State deprive any person of life, liberty, or property, without due process of law." It is well settled that a public employee cannot invoke the procedural protections of the Due Process Clause unless the aggrieved employee can establish that he has been deprived of a liberty or property interest protected by the clause. Board of Regents v. Roth, 408 U.S. 564, 569-70 (1972); Royster v. Board of Trustees of Anderson County School District #5, 774 F.2d 618, 620 (4th Cir. 1985), cert. denied, 475 U.S. 1121, 90 L. Ed. 2d 184, 106 S. Ct. 1638 (1986). Unless an employee satisfies this threshold requirement, the Due Process Clause is not implicated by the discharge. Id. at 621; Bunting v. City of Columbia, 639 F.2d 1090, 1093-94 (4th Cir. 1981).[5]

An employee's abstract desire for or unilateral expectation of continued employment is insufficient to give rise to a constitutionally protected property interest, Roth, 408 U.S. at 577; Sabet v. Eastern Virginia Medical Authority, 775 F.2d l266, 1269 (4th Cir. 1985), "[a] property interest exists

---

[5] The plaintiff's reliance on Cleveland Board of Education v. Loudermill et al., 470 U.S. 532 (1985) is misplaced. In Loudermill, the employee was a classified civil servant by state statute who could only be terminated for "malfeasance or nonfeasance in office." The question whether he had a property interest in continued employment was not properly raised for decision by the Court. Id. at 538-539.

when one has a legitimate claim of entitlement . . . arising from such sources as state statutes, local ordinances, and employment contracts." Bunting, 639 F.2d at 1093.  It is axiomatic that where a "property interest" is alleged to have been created, the sufficiency of the claim of entitlement is determined by reference to state law.  Bishop v. Wood, 426 U.S. 341 (1976).

In Bishop, a former policeman, whose employment had been terminated by the city manager without a hearing brought an action to determine the sufficiency of the cause for his discharge in the United States District Court for the Western District of North Carolina, contending that he had a constitutional right to a pre-termination hearing since he was classified as a "permanent employee" under a city ordinance providing that a permanent employee whose work was unsatisfactory was to be notified of his deficiencies and informed of how his work could be made satisfactory.  The District Court granted defendant city officials' motion for summary judgment and the Fourth Circuit affirmed.

On certiorari, the United States Supreme Court affirmed. The court held the former policeman's employment status was not a property interest under the due process clause of the Fourteenth Amendment, since under North Carolina law, which was determinative of whether there was a property interest in employment, an enforceable expectation of continued employment could exist only if the employer, by statute or contract, had actually granted some form of guarantee.  The District Court concluded that under the ordinance, the former policeman held his position at the will and pleasure of the city. Cf Rhodes v. Smith, 273 S.C. 13, 254 S.E. 2d 49 (1979); Bane v. City of Columbia, 480 F. Supp. 34 (D.S.C.1979); and Bunting, 639 F. 2d 1090 (4th Cir. 1981)

In the case at bar, Straub asserts that County's employee handbook, adopted by county ordinance, creates a property interest in continued employment.  The first page of the handbook states in capitalized, bold print:

**IMPORTANT NOTICE**

**THIS HANDBOOK PROVIDES PROCEDURES WHICH GUIDE ADMINISTRATIVE ACTIONS ATTENDING TO PERSONNEL MATTERS. THE PROVISIONS OF THE HANDBOOK DO NOT CONSTITUTE A BINDING CONTRACT, AND THE COUNTY RETAINS THE UNILATERAL RIGHT TO CHANGE THOSE PROVISIONS AT ITS DISCRETION. IN THOSE INSTANCES WHERE THERE IS A CONFLICT WITH A STATE LAW OF GENERAL APPLICABILITY, STATE LAW SHALL TAKE PRECEDENCE OVER THIS HANDBOOK. ALL COUNTY EMPLOYEES ARE CONSIDERED AT-WILL EMPLOYEES.**

Section 3.2.21 defines "grievable matters" as "those which result in adverse action" and includes discharge. It provides for a grievance committee comprised of five county employees and two alternates chosen from a pool of grievance committee members. Section 3.2.51 defines but does not require a "written warning" and "final written warning" for misconduct by the employee. The handbook also provides for a probationary period for new employees before becoming "regular employees". Section 11.4 applies to "disciplinary actions" and provides for certain "prohibited conduct", including "b. reporting to work under the influence of alcohol or drugs . . ." The handbook states, "in the event it becomes necessary to discipline an employee, one of the following types of discipline **may** occur: verbal warning, written warning, final written warning and/or suspension; and termination." Id., emphasis added. However, the handbook further states:

> Any of these forms of discipline can be applied or omitted at management's discretion depending on the circumstances, and particular forms of discipline may be repeated if necessary. **THIS IN NO WAY IMPLIES ANY CONTRACTUAL OBLIGATION TO FOLLOW ANY CERTAIN PROCEDURE** . . .

Id.

Additionally, the same section of the handbook states: "All instances of misconduct will be handled on a case-by-case basis. This disciplinary procedure is in no way intended to create a contract between Greenville County and any employee." Section 11.5 concerning grievances provides that "any

11

questions concerning whether an employee's complaint is grievable . . . shall be determined by the County Administrator and the Human Resource Director." A grievance procedure is provided in section 11 of the handbook, but it provides in bold print:

> **Nothing in this grievance procedure creates a property interest in employment or a contract of employment, nor does this procedure limit the authority of the County or an appointed or elected official to terminate any employee when the County or respective appointed or elected official considers such action to be necessary for the good of the County.**

Under South Carolina law, an at-will employee may be terminated at any time. However, an employee's at-will status may be altered by the terms of an employee handbook. Conner v. City of Forest Acres, 348 S.C. 454, 560 S.E.2d 606 (2002). Where an employer issues a handbook, but wishes to continue to utilize employment at-will, it must insert a conspicuous disclaimer in the handbook. Small v. Springs Industries, Inc., 292 S.C. 481, 357 S.E.2d 452 (1987). Disclaimers have been held to be conspicuous as a matter of law where they are in a prominent position, in bold, capitalized print. See Marr v. City of Columbia, 307 S.C. 545, 416 S.E.2d 615 (1992). In the case at bar, the Court finds that the disclaimer (which was on the front cover of the ordinance adopting the handbook in bold, capitalized print) was conspicuous. Additionally, not only does a conspicuous disclaimer appear on the front page, it is repeated in both the discipline section and grievance section that there is no contract.

The next inquiry is whether the handbook made promises that could be construed as creating a contract. "Mandatory, progressive discipline procedures may constitute enforceable promises." Hessenthaler v. Tri-County Sister Help, Inc., 365 S.C. 101, 616 S.E. 2d 694 (2005). The handbook in the instant case does not contain mandatory discipline procedures. The language of the handbook is precatory and permissive and gives discretion to the County whether to follow it. The policy specifically provides that the county administrator has the right to decide whether a particular situation

is grievable, and County took the position that the drug and alcohol policy was not subject to the grievance procedure.  Accordingly, because the plaintiff is an employee at-will and the handbook has not altered that relationship or created an employment contract, then it cannot be said to create a "property interest" in continued employment.[6]  Therefore, the due process clause has not been implicated by presence of any property interest.

Next, the Court must determine whether a constitutionally protected liberty interest was implicated.[7]  Generally, where a public employer who discharges an employee "makes charges against him that might damage his standing in the community or otherwise imposes a stigma on the employee that forecloses his freedom to take advantage of other employment opportunities, an employee's interest in liberty may be implicated, and he should be granted a hearing to clear his name."  Beckham v. Harris, 756 F.2d 1032, 1038 (4th Cir. 1985), citing Board of Regents v. Roth, 408 U.S. 564, 573-75 (1972).  However, where "there is no public disclosure of the reasons for discharging a public employee whose job is terminable at the will of the employer, no liberty interest is implicated."  Id., citing Bishop v.

---

[6] The County and Municipal Employees Grievance Procedure Act, S.C. Code Ann. §§8-17-110 through 8-17-160, raised for the first time in the proposed order submitted by the plaintiff provides for a uniform procedure to resolve grievances of county and municipal employees.  However, this statute in no way creates a property interest in continued employment.  See S.C. Code Ann. §8-17-140 (1976), as amended, providing that, once the decision of the grievance committee is final, the individual with discharge authority shall make its own decision without further hearing "and that decision is final".  The Court expresses no opinion as to whether the statute may impact the plaintiff's claim under the state constitution.  In addition, the Court notes that, although the plaintiff is not entitled to a hearing under the due process clause of the United States Constitution, he may have the right to a grievance hearing under the state statute.  See Bunting v. City of Columbia, 639 F.2d 1090 (4th Cir. 1981), wherein the Court held that the city employee did not have any constitutional rights implicated in his dismissal, but agreed that he was entitled to a grievance hearing under §8-17-110, and remanded the case with directions to grant a hearing on the employee's grievances.

[7] The plaintiff only appears to argue that the case involves a property interest.  However, in an abundance of caution in the event that the plaintiff has alleged that the case involves a liberty interest, the Court will address this point.

Wood, 426 U.S. 341, 348 (1976).  See also, Loudermill, supra, ("the failure to allege that the reasons for the dismissal were published dooms this claim." Id. at note 13.)

In the case at bar, County did not publicly disclose the reasons for the discharge.

> Q: You don't have any information or indication that any County employees or people with HR or anything talked to Dean about the reasons for your termination?
> A: I have no idea.
> Q: Any other employees that you're aware of who may have disclosed to perspective employers the reasons for your termination from Greenville County?
> A: None that I can think of, no, sir.

Straub Depo., page 14.

Straub stated that he himself told a friend who worked for Greenville County about the drug test results and that this employee told Spartanburg County EMS, where Straub had applied for a job, about the situation.  The plaintiff has made no allegation that Straub's friend was acting on behalf of or in some official capacity for Greenville County at the time he disclosed the information that Straub had given to him.  In addition, he should not be allowed to bring suit against County on the basis of information that he himself gave to another employee.  The Court finds that the County violated no liberty interest of Straub.

Therefore, the Court finds that it is not necessary to reach the issue of whether the process provided to Straub satisfied the requirements of procedural due process.[8]

**Constitutionality of Drug and Alcohol Policy**

The plaintiff alleges in his amended complaint that the May 2002 alcohol and drug policy is unconstitutionally vague or violative of the Fourth and Fourteenth Amendments to the United States

---

[8]Even though the due process clause was not implicated as set forth above, the Court notes that the plaintiff was given the opportunity to discuss his position on the matter with the MRO prior to his termination.

Constitution and the South Carolina Constitution. He complains that the policy fails to give the MRO a standard to guide his decision and that the employee is not afforded the right to request a hearing. However, the plaintiff's arguments in his cross motion for partial summary judgment mainly center on his contention that he had a property right in continued employment and that he was not afforded a hearing in which to challenge his termination. He cites no cases in support of his argument as to vagueness.

A policy may be deemed to be unconstitutionally vague "if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits . . ." Giaccio v. Pennsylvania, 382 U.S. 399, 402-403 (1966). In the instant case, the policy clearly applies where employees test positive for drug use and delineates specific standards as to the initial and confirmatory amounts of a respective drug that would be deemed a positive result. Therefore, the conduct it prohibits is easily understood. The plaintiff's arguments concerning the lack of standards for use by the MRO and the lack of the opportunity for a hearing depend upon a finding that the employee had a property or liberty interest which implicated the safeguards of the due process clause. Since the Court has found that the employee was at-will, he cannot challenge the perceived lack of due process. The Court has already found that the policy does not violate the Fourth Amendment's prohibition of unreasonable searches.

**Substantive Due Process under Fourteenth Amendment**

Straub contends that the actions of the County deprived him of substantive due process. The Court disagrees. "The protection of substantive due process is indeed narrow and covers only state action which is 'so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." Sylvia Development Corp v. Calvert County,

Md., 48 F.3d 810, 827 (4th Cir. 1995), citing Rucker v. Harford County, 946 F.2d 278, 281 (4th Cir. 1991), cert. denied, 502 U.S. 1097 (1992).  The actions by County in discharging an EMS worker who tested positive for illegal drugs is not arbitrary and capricious when the public interest in safety is so high.  This argument lacks merit.

**Breach of Contract Claims**

As discussed hereinabove, the Court has found that County's personnel handbook did not create a contract as a matter of law, since it contains a conspicuous disclaimer and does not contain enforceable promises.  Therefore, for the reasons stated above, the Court dismisses the breach of contract claim; thus, the claim for breach of contract accompanied by fraud is also dismissed.

**Conclusion**

The United States Court of Appeals for the Fourth Circuit has held that "the federal courts are courts of limited jurisdiction."  McQuillen v. National Cash Register Co., 112 F.2d 877, 881 (4th Cir. 1940).  Considering such, this Court finds that state constitutional claims should be **DISMISSED** for want of jurisdiction.  This Court can decline to continue the action as to any pendent state claims if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The Court notes that the statute of limitations on the plaintiffs' state law causes of actions were tolled while the claims were pending in this Court, and for a period of thirty (30) days after they are dismissed.  28 U.S.C. § 1367(d).  Therefore, pursuant to 28 U.S.C. § 1367(d) and Jinks v. Richland County, 538 U.S. 456 (2003), the plaintiff has **thirty (30) days** from the date this order is entered to commence his state constitutional causes of action in State court.  Notably, commencement of actions is governed by Rule 3 of the South Carolina Rules of Civil Procedure.

For the foregoing reasons, the undersigned **GRANTS** defendant's [45] Motion for Summary Judgment as to the federal portions of the plaintiff's constitutional causes of action [contained in causes of action 1- 5] and as to the plaintiff's Sixth and Seventh causes of action; **DENIES** plaintiff's [46] Motion for Partial Summary Judgment as to the federal claims; and declines to exercise jurisdiction and thus **DISMISSES** the plaintiff's causes of action which allege violations of the Constitution of the State of South Carolina.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
April 20, 2006